1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

CURTIS L. DOWNING,                    )
                                      )
              Plaintiff,              )         2:12-cv-00332-JCM-CWH
                                      )
vs.                                   )
                                      )         **ORDER**
JOHNNIE GRAVES, *et al.*,             )
                                      )
              Defendants.             )
_____/

    Plaintiff, who is a prisoner in the custody of the Nevada Department of Corrections, has submitted a civil rights complaint pursuant to 42 U.S.C. § 1983 and has filed an application to proceed *in forma pauperis*.

**I.  *In Forma Pauperis* Applications (ECF No. 1, 2, 4, 5)**

    Before the court is plaintiff's application and amended applications to proceed *in forma pauperis*.  Based on the information submitted regarding plaintiff's financial status, the court finds that plaintiff is not able to pay an initial installment  payment towards the full filing fee pursuant to 28 U.S.C. § 1915.  Plaintiff will, however, be required to make monthly payments towards the full $350.00 filing fee when he has funds available.

**II. Motion to Supplement Complaint (ECF No. 6)**

Plaintiff has submitted a motion to amend or supplement his civil rights complaint with additional defendants and additional claims.  (ECF No. 6).  Attached to plaintiff's motion is plaintiff's sworn affidavit, which contains plaintiff's allegations against two new defendants, correctional officers J. Meranza and R. Hill.  (ECF No. 6, at pp. 4-8).  Plaintiff also submits an affidavit containing the same allegations against defendant Meranza and Hill, signed by plaintiff and several other inmates.  (ECF No. 6, at pp. 9-13).  Plaintiff asserts that the actions of defendants Meranza and Hill were consistent with the allegations of the complaint, in that plaintiff alleges that correctional staff have retaliated against him because he assists other inmates with filing inmate grievances or legal actions.  The court grants plaintiff's motion to supplement the complaint and construes plaintiff's affidavit concerning correctional officers Meranza and Hill as a supplement to the complaint.  *See* Fed. R. Civ. P. 15(d).  The clerk of court is directed to detach and file plaintiff's affidavit (ECF No. 6, at pp. 4-8), which shall be construed as the supplement to the complaint.

**III. Screening Standards**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.  *See* 28 U.S.C. § 1915A(a).  In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1),(2).  *Pro se* pleadings, however, must be liberally construed.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d. 696, 699 (9th Cir. 1988).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act of 1995 (PLRA), a federal court must dismiss a prisoner's claim, "if the allegation of

2

1   poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief

2   may be granted, or seeks monetary relief against a defendant who is immune from such relief."  28

3   U.S.C. § 1915(e)(2).  Dismissal of a complaint for failure to state a claim upon which relief can be

4   granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same

5   standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint.

6   When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend

7   the complaint with directions as to curing its deficiencies, unless it is clear from the face of the

8   complaint that the deficiencies could not be cured by amendment.  *See Cato v. United States*, 70

9   F.3d. 1103, 1106 (9th Cir. 1995).

10          Review under Rule 12(b)(6) is essentially a ruling on a question of law.  *See Chappel v.*

11  *Laboratory Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000).  Dismissal for failure to state a

12  claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim

13  that would entitle him or her to relief.  *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).  In

14  making this determination, the court takes as true all allegations of material fact stated in the

15  complaint, and the court construes them in the light most favorable to the plaintiff.  *See Warshaw v.*

16  *Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).  Allegations of a *pro se* complainant are held to less

17  stringent standards than formal pleadings drafted by lawyers.  *See Hughes v. Rowe*, 449 U.S. 5, 9

18  (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  While the standard under Rule

19  12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels

20  and conclusions.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A formulaic recitation

21  of the elements of a cause of action is insufficient.  *Id.; see Papasan v. Allain*, 478 U.S. 265, 286

22  (1986).

23          Additionally, a reviewing court should "begin by identifying pleadings [allegations] that,

24  because they are no more than mere conclusions, are not entitled to the assumption of truth."

25  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "While legal conclusions can provide the framework of

26  a complaint, they must be supported with factual allegations."  *Id.*  "When there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

Finally, all or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

**IV. Screening of the Complaint and Supplement**

Plaintiff brings action against the following persons: Johnnie T. Graves, correctional investigator; Lee Griggs, correctional sergeant; Brian Williams, warden; James Cox, director of corrections; Bryan Wilson, correctional officer; Cheryl Burson, associate warden; Jerry Howell, associate warden; Frank Dreesen, associate warden; Brian Connett, assistant director; Rashonda Smith, law library supervisor; Howard Skolnik, former director of corrections; Sheryl Foster, assistant director of operations; A. Romero, correctional officer; R. Woodbury, correctional officer; Brian Sandoval, Governor of Nevada; Ross Miller, Secretary of State; Catherine Cortez-Masto, Attorney General of Nevada; and Doe defendants. In the supplement, plaintiff brings action against J. Meranza and R. Hill, both correctional officers. Plaintiff claims that defendants violated his constitutional rights during his incarceration at the Southern Desert Correctional Center. Plaintiff seeks declaratory, injunctive, and monetary relief against defendants.

**A. Nature of the Case Statement**

In the section of the complaint entitled "nature of the case," plaintiff alleges six "issues" which he incorporates by reference into the individual counts of the complaint. (Compl., at ¶¶ 25-107; pp. 7-24). The court summarizes plaintiff's six issues, as follows:

### 1. First Issue

As the first issue, plaintiff alleges that on March 1, 2010, defendant Graves wrote a false disciplinary charge accusing him of charging legal fees for performing legal service for other inmates, a violation of prison regulations. Plaintiff alleges that defendant Graves was well aware of his activity of assisting other inmates with their legal pursuits, and the false charge against plaintiff was an effort to dissuade him from engaging in this activity. Plaintiff alleges that defendant Griggs conducted his disciplinary hearing on March 23, 2010, that he was found guilty of the charge, and that he was sanctioned 120 days in disciplinary segregation. Plaintiff's appeals of the disciplinary finding of guilt were denied by defendants Williams and Cox. Plaintiff alleges that the conditions of disciplinary segregation were dramatically different from the typical prison conditions in general population. Plaintiff alleges that he spent 120 days in disciplinary segregation, subject to the following conditions: (1) birds flying throughout the unit dropping feces; (2) cold and inadequate meals; (3) deprivation of store privileges to purchase supplement food items, resulting in an unbalanced diet, hunger, and substantial weight loss; (4) insect infested cell; (5) no cleaning supplies to clean his cell; (6) reduced phone time and reduced time out of his cell; and (7) insufficient water during outside recreation; (8) deprivation of his personal appliances and electricity to his cell; and (9) cold showers. Plaintiff alleges that the entire incident has made him apprehensive about assisting other inmates with their legal pursuits. (Compl., at ¶¶ 25-40; pp. 7-10).

### 2. Second Issue

As the second issue, plaintiff alleges that on September 14, 2010, he headed to the SDCC law library for his regular appointment to conduct legal research, in an effort to assist other inmates with their legal pursuits. Plaintiff alleges that he was in possession of his own legal materials, as well as the legal materials of those inmates whom he was assisting. Plaintiff was stopped by defendant Wilson, whom plaintiff describes as "well-aware of plaintiff's reputation as a so-called 'jailhouse lawyer.'" Defendant Wilson inspected the papers that plaintiff carried and told plaintiff that he was not supposed to be in possession of other prisoners' legal documents without their permission.

1    Plaintiff attempted to explain to defendant Wilson that he had the inmates' verbal permission to be

2    in possession of their legal documents.  Still, defendant Wilson confiscated the legal materials, and

3    plaintiff alleges that in doing so, defendant Wilson hindered his ability to assist other prisoners with

4    their legal work.  Plaintiff told defendant Wilson that he was submitting a grievance against him that

5    same day regarding the incident, which he in fact filed on September 14, 2010 and on September 16,

6    2010.  On September 16, 2010, plaintiff was served with a notice of charges (fees for legal service

7    and unauthorized contact) which had been written by defendant Wilson.  Plaintiff asserts that Wilson

8    wrote the notice of charges in retaliation for plaintiff having filed a grievance against Wilson, for

9    having "proved defendant Wilson wrong" regarding AR 722, and as a means of dissuading plaintiff

10   from assisting other inmates with their legal pursuits.  Plaintiff included these issues when he

11   submitted another grievance against defendant Wilson on September 16, 2010.  Plaintiff states that

12   the charges brought by defendant Wilson were ultimately dismissed for lack of an evidentiary basis.

13   Plaintiff alleges that his grievances against defendant Wilson were denied by defendant Burson, at

14   every level of the grievance procedure.  Plaintiff alleges that defendant Wilson denied the grievances

15   to hide defendant Wilson's retaliation.  Plaintiff alleges that the entire incident has made him

16   apprehensive about assisting other inmates with their legal pursuits.  (Compl., at ¶¶ 41-63; pp. 11-

17   14).

18            **3. Third Issue**

19            As the third issue, plaintiff alleges that in late 2010, he filed a grievance concerning poor

20   living conditions in SDCC unit 4, where he was housed.  On or about December 15, 2010,

21   defendants Burson, Howell, and Williams moved plaintiff from his two-man per cell housing into

22   dormitory style housing.  Plaintiff asserts that this action was taken to silence plaintiff regarding his

23   concerns about unit 4 housing, because the conditions of the dormitory housing were unfavorable

24   when compared to plaintiff's prior housing in a two-man cell.  Plaintiff submitted a grievance

25   regarding the alleged retaliatory move to dormitory housing, but the grievance was denied at every

26   level by defendants Burson, Williams, and Cox.  Plaintiff alleges that on December 22, 2010, he

submitted another grievance, complaining about the unfavorable restroom conditions in the dormitory housing. Plaintiff alleges that on December 29, 2010, defendants Burson, Howell, and Williams made a classification recommendation that plaintiff be transferred out of the Southern Desert Correctional Center (SDCC). Thereafter, on January 26, 2011, plaintiff was transferred from SDCC to the Nevada State Prison (NSP). Plaintiff alleges that the transfer to NSP was made by defendants Burson, Howell, and Williams in retaliation for the grievance writing activity and was intended to silence plaintiff.

On February 11, 2011, plaintiff filed a grievance alleging that the transfer to NSP was retaliatory. The grievance was denied at every level by defendants Burson, Williams, and Cox. Plaintiff alleges that he was transferred back to SDCC on June 22, 2011, due to the NDOC's plans to close NSP.

On November 11, 2012, plaintiff alleges that he submitted a grievance challenging certain aspects of AR 722, the regulation governing law libraries within the NDOC. Plaintiff's grievance was rejected by defendant Burson, and plaintiff appealed the decision. Plaintiff alleges that defendants Burson and Williams then recommended to defendant Foster that he be charged with abuse of the NDOC grievance procedure. Plaintiff asserts that defendants Burson and Williams made the recommendation in retaliation for his grievance writing and appeal activity. Defendant Foster then issued a notice of charges (NOC) against plaintiff, charging him with abuse of the grievance procedure. Plaintiff asserts that defendant Foster charged him in a conspiracy with defendants Burson and Williams to retaliate against plaintiff for his appeal of defendant Burson's rejection of his earlier grievance, and to cease plaintiff's grievance writing activity. On January 19, 2012, correctional sergeant Torsky (who is not named as a defendant) conducted a disciplinary hearing and found plaintiff guilty of abusing the grievance procedure. On January 19, 2012, plaintiff appealed the guilty finding and also filed a grievance against defendant Foster for issuing a retaliatory notice of charges.

On January 24, 2012, in plaintiff's absence, defendants Romero and Woodbury "ransacked"

his cell and submitted a NOC against plaintiff for theft of various items found in plaintiff's cell. Plaintiff alleges that defendants Romero and Woodbury took these actions in retaliation against plaintiff because plaintiff "wrote too many" grievances. Plaintiff alleges that following these incidents, he discontinued filing grievances to avoid further acts of retaliation. (Compl., at ¶¶ 64-93; pp.15-19).

### 4. Fourth Issue

Plaintiff alleges that in the late part of 2010, defendants Williams, Howell, Burson, Cox, and Skolnik revised SDCC's law library operations policy in an unconstitutional manner to delay, hinder, and discourage plaintiff and other prisoners from their legal pursuits. Plaintiff alleges that defendants Dreesen, Connett, Foster, and Smith maintained the revised law library operations policy. Plaintiff alleges that the revised SDCC law library operations policy includes: (1) reduction of law library access from five days per week and five hours per day to two days per week and two and one half hours per day; (2) the installation of a complex computer research system which cannot be fully operated by the majority of SDCC prisoners; (3) only five legal research computers, one or more of which is inoperable at times; (4) the removal of nearly all legal research books; (5) only twenty prisoners are permitted in the library in a single two and one half hour time block; (6) prisoners are limited to 30 minutes of computer legal research, unless no other prisoners are awaiting computer research; (7) prisoners are only permitted access to the law library with those in their respective units and are precluded from gaining legal assistance from prisoners in other units; (8) SDCC prisoners, particularly those housed in segregated housing units are routinely deprived of sufficient legal material and legal assistance. Plaintiff further complains that there is no training course to ensure that SDCC legal assistants have sufficient legal training to effectively assist other prisoners in submitting meaningful pleadings to the courts. (Compl., at ¶¶ 94-99; pp. 20-21).

### 5. Fifth Issue

Plaintiff alleges that defendant Burson, as the SDCC grievance coordinator, developed a policy, practice, or custom of rejecting prisoners' attempts to appeal Burson's initial rejection of

1    grievances.  (Compl., at  ¶¶ 100-104; p. 22).

2               **6. Sixth Issue**

3        Plaintiff alleges that defendants Sandoval, Miller, and Cortez-Masto, as members of the

4    Nevada Board of Prison Commissioners, and defendants Skolnik and Cox, have deliberately failed to

5    ensure the proper training of defendants Graves, Griggs, Williams, Wilson, Burson, Howell,

6    Dreesen, Connett, Smith, Foster, Romero, and Woodbury as to: (1) proper use of the NDOC

7    grievance and disciplinary procedure; (2) the effective and proper operation of the SDCC law library;

8    and (3) the constitutional rights of plaintiff and NDOC prisoners with respect to prison conditions.

9    Plaintiff asserts that the failure of defendants to ensure proper training of correctional staff resulted

10   in the circumstances described in issues one through five.  (Compl., at  ¶¶ 105-106; p. 23).

11

12            **B.  Defendants in Their Official Capacity**

13       Plaintiff sues defendants in their individual and official capacities.  State officials sued in

14   their official capacity for damages are not persons for purposes of § 1983.  *See Arizonans for Official*

15   *English v. Arizona*, 520 U.S. 43, 69 n.24 (1997); *Hafer v. Melo*, 502 U.S. 21, 27 (1991).  Moreover,

16   the Eleventh Amendment bars damages actions against state officials in their official capacity.  *See*

17   *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007); *Doe v. Lawrence Livermore Nat'l Lab.*, 131

18   F.3d 836, 839 (9th Cir. 1997).  As such, plaintiff's claims for damages against all defendants in their

19   official capacity are dismissed from this action with prejudice.

20            **C.  Count I**

21       Plaintiff incorporates into count I paragraphs 25-40 and 107 of the complaint, which appears

22   as the "first issue" in the "nature of the case" portion of the complaint.  (Compl., at pp. 7-10).  In

23   count I, plaintiff alleges that he was "denied and deprived of his right to assist other needy prisoners

24   in their legal pursuits under the First Amendment . . . by defendant Graves when he issued a false

25   notice of charges against plaintiff for allegedly charging legal fees to another prisoner as a pretext to

26   dissuade or compel plaintiff to cease his constitutionally-protected activity of assisting other needy

9

1    prisoners with their various legal pursuits." (Compl., at p. 25).

2         "[A] prison inmate retains those First Amendment rights that are not inconsistent with his

3    status as a prisoner or with the legitimate penological objectives of the corrections system. *Pell v.*

4    *Procunier*, 417 U.S. 817, 822 (1974). A regulation that impinges on a prisoner's First Amendment

5    rights "is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482

6    U.S. 78, 89 (1987) (regarding regulations on inmate-to-inmate communications). In determining

7    whether a prison is reasonably related to a legitimate penological interest, the court considers the

8    following *Turner* factors: (1) whether there is a valid rational connection between the regulation and

9    he interest used to justify the regulation; (2) whether prisoners retain alternative means of exercising

10   the right at issue; (3) the impact of the requested accommodation will on inmates, prison staff, and

11   prison resources generally; and (4) whether the prisoner has identified easy alternatives to the

12   regulation which could be implemented at a minimal cost to legitimate penological interests.

13   *Turner*, 482 U.S. at 89; *Beard v. Banks*, 548 U.S. 521, 528 (2006). Additionally, a prisoner's right to

14   give legal assistance to other inmates deserves no more First Amendment protection than any other

15   form of prisoner speech. *Shaw v. Murphy*, 532 U.S. 223, 231-32 (2001).

16        "A prisoner suing prison officials under [§] 1983 for retaliation must allege that he was

17   retaliated against for exercising his constitutional rights and that the retaliatory action does not

18   advance legitimate penological goals, such as preserving institutional order and discipline." *Barnett*

19   *v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curium); *see also Rizzo v. Dawson*, 778 F.2d

20   527, 532 (9th Cir. 1985). "[P]risoners have a First Amendment right to file prison grievances."

21   *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). Retaliating against prisoners for exercising

22   the right to file prison grievances is itself a constitutional violation. *Id.* at 1269. The prisoner must

23   allege that his First Amendment rights were chilled or infringed by the alleged retaliatory action. *See*

24   *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *see also Brodheim v. Cry*, 584 F.3d 1262, 1271

25   (9th Cir. 2009).

26        In the instant case, plaintiff has alleged that defendant Graves was familiar with plaintiff's

10

1   constitutionally-protected activity of assisting other inmates with their legal filings.  Plaintiff has

2   alleged that in retaliation for plaintiff engaging in constitutionally protected activity, defendant

3   Graves filed a false disciplinary charge against plaintiff.  Plaintiff has further alleged that his First

4   Amendment rights were chilled, insofar as plaintiff was apprehensive about continuing to assist

5   other inmates with their legal claims.  (Compl., at ¶¶ 25-28; pp. 7-8).  The complaint states a

6   colorable First Amendment retaliation claim against defendant Graves.  Count I shall proceed against

7   defendant Graves.

8       **D.  Count II**

9        Plaintiff incorporates into count II paragraphs 25-40 and 107 of the complaint, which appears

10   as the "first issue" in the  "nature of the case" portion of the complaint.  (Compl., at pp. 7-10).

11   Plaintiff alleges that he was "denied and deprived of his right to due process under the Fourteenth

12   Amendment . . . by defendant Griggs when he found plaintiff guilty of charging another prisoner

13   legal fees despite the complete lack of facts and evidence presented to plaintiff to substantiate such a

14   charge and to allow plaintiff the opportunity to present any type of defense against the charge,

15   including the calling of witnesses."  (Compl., at p. 27).

16        In order to state a cause of action for deprivation of procedural due process, a plaintiff must

17   first establish the existence of a liberty interest for which the protection is sought.  In *Sandin v.*

18   *Connor*, 515 U.S. 472, 487 (1995), the Supreme Court abandoned earlier case law which had held

19   that states created protectable liberty interests by way of mandatory language in prison regulations.

20   *Id*.  Instead, the Court adopted an approach in which the existence of a liberty interest is determined

21   by focusing on the nature of the deprivation.  *Id*.  In doing so, the Court held that liberty interests

22   created by prison regulations are limited to freedom from restraint which "imposes atypical and

23   significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484.

24        A prisoner has a liberty interest when confinement imposes an "atypical and significant

25   hardship . . . in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 484.  In *Sandin*,

26   the Court focused on three factors in determining that plaintiff possessed no liberty interest in

1   avoiding disciplinary segregation: (1) disciplinary segregation was essentially the same as

2   discretionary forms of segregation; (2) a comparison between the plaintiff's confinement and

3   conditions in the general population showed that the plaintiff suffered no "major disruption in his

4   environment;" and (3) the length of the plaintiff's sentence was not affected. *Sandin*, 515 U.S. at

5   486-87.

6           Where a protected liberty interest exists, the Supreme Court has set out the following

7   procedural due process requirements for disciplinary detention of a prisoner: (1) written notice of the

8   charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of

9   the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders

10  of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to

11  call witnesses in his defense, when permitting him to do so would not be unduly hazardous to

12  institutional safety or correctional goals; (5) legal assistance to the prisoner where the prisoner is

13  illiterate or the issues presented are legally complex. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

14  In addition, "the requirements of due process are satisfied if some evidence supports the decision by

15  the disciplinary board . . . ." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454

16  (1985).

17          In the instant case, plaintiff has alleged that he spent 120 days in disciplinary segregation as a

18  result of the disciplinary finding of guilt.  Defendant Griggs was the hearing officer at the

19  disciplinary hearing, which was held on March 23, 2010.  Plaintiff was found guilty of charging for

20  providing legal services to other inmates.  Plaintiff alleges that defendant Griggs denied him

21  procedural safeguards prior to the disciplinary hearing, including the denial of his right to present

22  witnesses in his defense.  Plaintiff also alleges that defendant Griggs found him guilty of the

23  disciplinary charges based on the false report of correctional staff, without sufficient evidence.

24  Plaintiff's complaint contains a detailed description of how disciplinary segregation housing differed

25  from general population housing, posing an atypical and significant hardship on him in relation to

26  the ordinary incidents of prison life.  Plaintiff alleges material differences between the conditions in

general population versus the conditions in disciplinary segregation.  These conditions include: (1) birds flying throughout the unit dropping feces; (2) cold and inadequate meals; (3) deprivation of store privileges to purchase supplement food items, resulting in an unbalanced diet, hunger, and substantial weight loss; (4) insect infested cell; (5) no cleaning supplies to clean his cell; (6) reduced phone time and reduced time out of his cell; and (7) insufficient water during outside recreation; (8) deprivation of his personal appliances and electricity to his cell; and (9) cold showers.  (Compl., at ¶¶ 38-39; pp. 9-10).  The court construes plaintiff's allegation of 120 days in disciplinary housing as a sufficient allegation of an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life."  *See Sandin*, 515 U.S. at 484; *see also Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003); *Ramirez v. Gomez*, 334 F.3d 850, 861 (9th Cir. 2003).  Based on these allegations, plaintiff states a colorable claim against defendant Griggs for due process violations in connection with the disciplinary hearing.  *See Wolff v. McDonnell*, 418 U.S. at 556; *Superintendent v. Hill,* 472 U.S. at 454.  Count II shall proceed as to defendant Griggs.

**E. Count III**

Plaintiff incorporates into count III paragraphs 25-40 and 107 of the complaint, which appears as the "first issue" in the  "nature of the case" portion of the complaint.  (Compl., at pp. 7-10).  Plaintiff alleges that he was "denied and deprived of his right to assist other needy prisoners in their legal pursuits under the First Amendment . . .  by defendants Graves, Griggs, Williams, and Cox when they initiated, found plaintiff guilty of, and maintained a false disciplinary charge of  charging for legal fees against plaintiff in a conspiracy to dissuade and/or compel plaintiff to cease assisting other needy prisoners with their legal pursuits."  (Compl., at p. 28).  Plaintiff has alleged that defendant Graves wrote a false charge against him, accusing him of charging for legal services.  Defendant Griggs found plaintiff guilty of this charge, without sufficient evidence and denying plaintiff procedural safeguards at the hearing.  This resulted in plaintiff's confinement in disciplinary segregation for 120 days.  Defendants Williams and Cox denied plaintiff's appeal of the disciplinary finding of guilt.  Plaintiff has alleged that defendants acted in concert to prevent him from assisting

other inmates with legal filings.  Plaintiff has alleged sufficient facts to state a colorable First

Amendment claim against defendants Graves, Griggs, Williams, and Cox.  *See Turner v. Safley*, 482

U.S. 78, 89 (1987); *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  Count III shall proceed against

defendants Graves, Griggs, Williams, and Cox.

### F.  Count IV

Plaintiff incorporates into count IV paragraphs 41-63 and 107 of the complaint, which

appears as the "second issue" in the "nature of the case" portion of the complaint.  (Compl., at pp.

11-14).  Plaintiff alleges that he was "denied and deprived his right to file prison grievances and to

assist other needy prisoners with their legal pursuits under the First Amendment of the United States

Constitution . . . . by defendant Wilson when he initiated a false NOC [notice of charges] against

plaintiff for allegedly charging legal fees and unauthorized contact in retaliation for plaintiff's verbal

notice to file a grievance against him as a means to dissuade or compel plaintiff to cease his activity

of assisting other needy prisoners with their legal pursuits."  (Compl., at p. 30).

"A prisoner suing prison officials under [§] 1983 for retaliation must allege that he was

retaliated against for exercising his constitutional rights and that the retaliatory action does not

advance legitimate penological goals, such as preserving institutional order and discipline."  *Barnett*

*v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curium); *see also Rizzo v. Dawson*, 778 F.2d

527, 532 (9th Cir. 1985).  "[P]risoners have a First Amendment right to file prison grievances."

*Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).  Retaliating against prisoners for exercising

the right to file prison grievances is itself a constitutional violation.  *Id.* at 1269.  The prisoner must

allege that his First Amendment rights were chilled or infringed by the alleged retaliatory action.  *See*

*Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *see also Brodheim v. Cry*, 584 F.3d 1262, 1271

(9th Cir. 2009).

In the instant case, plaintiff has alleged that defendant Wilson was aware of plaintiff's

constitutionally-protected activity of assisting other inmates with their legal filings.  Plaintiff has

alleged that in retaliation for plaintiff engaging in this constitutionally-protected activity, defendant

Wilson filed a false disciplinary charge against plaintiff. Plaintiff has further alleged that his First Amendment rights were chilled, insofar as plaintiff was apprehensive about continuing to assist other inmates with their legal claims. (Compl., at ¶¶ 41-63; pp. 11-14). The complaint states a colorable First Amendment retaliation claim against defendant Wilson. Count IV shall proceed against defendant Wilson.

### G. Count V

Plaintiff incorporates into count V paragraphs 41-63 and 107 of the complaint, which appears as the "second issue" in the "nature of the case" portion of the complaint. (Compl., at pp. 11-14). Plaintiff alleges that he was "denied and deprived of his right to seek redress of his grievances under the First Amendment . . . by defendant Burson when she deliberately blocked plaintiff's attempts to appeal her grievance rejection decisions to her superiors for the express purpose of preventing plaintiff from seeking redress of his grievance against defendant Wilson." (Compl., at p. 31).

Plaintiff has alleged that he filed a grievance against defendant Wilson for retaliating against him by bringing false charges against him. Plaintiff alleges that his grievance was denied. Plaintiff further alleges that defendant Burson rejected his grievances at every level of the grievance procedure, "as a means of preventing plaintiff from seeking redress of plaintiff's grievances past Burson's very own authority, and as a means of concealing the retaliatory conduct of defendant Wilson . . . ." (Compl, at ¶¶ 62-63; pp. 13-14). Plaintiff alleges that defendant Burson was aware of his grievance-writing activity. "[P]risoners have a First Amendment right to file prison grievances." *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). Retaliating against prisoners for exercising the right to file prison grievances is itself a constitutional violation. *Id.* at 1269. Plaintiff has alleged sufficient facts to state a colorable claim against defendant Burson for retaliation in violation of the First Amendment. Count V shall proceed against defendant Burson.

### H. Count VI

Plaintiff incorporates into count VI paragraphs 64-76 and 107 of the complaint, which appears as the "third issue" in the "nature of the case" portion of the complaint. (Compl., at pp. 15-

16).  Plaintiff alleges that he was "denied and deprived of his right to file prison grievances under the First Amendment . . . by defendant Burson, Howell, and Williams when they had plaintiff moved to a dormitory housing unit from his two-man cell and had plaintiff transferred to another institution in retaliation for his constitutionally-protected grievance writing activity thereby chilling plaintiff's First Amendment rights.  Plaintiff alleges that defendant Cox violated his rights, conspiring with defendants Burson, Howell, and Williams, in refusing to reverse their retaliatory actions . . . ." (Compl., at p. 32).

        In the instant case, plaintiff has alleged that he filed a grievance regarding poor living conditions in unit 4.  Plaintiff alleges that shortly after he filed his grievance, defendants Burson, Howell, and Williams moved him to dormitory housing where the conditions were much less favorable than his previous housing in a two-man cell within unit 4.  Defendants Burson, Howell, and Williams then made the decision to transfer plaintiff to another prison.  Plaintiff has alleged that defendants Burson, Howell, and Williams' decision to move him to the dormitory housing and to transfer him to another prison was in retaliation for plaintiff engaging in constitutionally protected activity of filing a grievance regarding the conditions of unit 4 housing.  Plaintiff further alleges that defendant Cox conspired with defendants Burson, Howell, and Williams to retaliate against him and chill his constitutionally-protected right to file inmate grievances.  (Compl., at ¶¶ 64-76; pp. 15-16).

        "[P]risoners have a First Amendment right to file prison grievances." *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).  Retaliating against prisoners for exercising the right to file prison grievances is itself a constitutional violation. *Id.* at 1269.  Plaintiff has alleged sufficient facts to state a colorable First Amendment retaliation claim against defendants Burson, Howell, Williams, and Cox.  Count VI shall proceed against defendants Burson, Howell, Williams, and Cox.

### I. Count VII

        Plaintiff incorporates into count VII paragraphs 77-86 and 107 of the complaint, which appears as the "third issue" in the "nature of the case" portion of the complaint.  (Compl., at pp. 16-18).  Plaintiff alleges that he was "denied and deprived of his right to file prison grievances under the

First Amendment . . . by defendants Burson, Williams, and Foster when they brought false abuse of grievance procedure charges against plaintiff, in retaliation for his grievance-writing activity and appeal of defendant Burson's informal grievance rejection decision, thereby chilling plaintiff's First Amendment rights." (Compl., at p. 34).

Plaintiff alleges that on November 11, 2012, he submitted a grievance challenging certain aspects of AR 722, the regulation governing law libraries within the NDOC.  Plaintiff's grievance was rejected by defendant Burson, and plaintiff appealed the decision.  Plaintiff alleges that defendants Burson and Williams then recommended to defendant Foster than he be charged with abuse of the NDOC grievance procedure.  Plaintiff asserts that defendants Burson and Williams made the recommendation in retaliation for his grievance writing and appeal activity.  Defendant Foster then issued a notice of charges (NOC) against plaintiff, charging him with abuse of the grievance procedure.  Plaintiff asserts that defendant Foster charged him as part of a conspiracy with defendants Burson and Williams to retaliate against plaintiff for his appeal of defendant Burson's rejection of his earlier grievance, and to cease plaintiff's grievance writing activity.  On January 19, 2012, correctional sergeant Torsky (who is not named as a defendant) conducted a disciplinary hearing and found plaintiff guilty of abusing the grievance procedure.  On January 19, 2012, plaintiff appealed the guilty finding and also filed a grievance against defendant Foster for issuing a retaliatory notice of charges.  (Compl., at ¶¶ 77-86; pp. 16-18).

"[P]risoners have a First Amendment right to file prison grievances."  *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).  Retaliating against prisoners for exercising the right to file prison grievances is itself a constitutional violation.  *Id.* at 1269.  Plaintiff has alleged sufficient facts to state a colorable claim against defendants Burson, Williams, and Foster for retaliation in violation of the First Amendment.  Count VII shall proceed against defendants Burson, Williams, and Foster.

### J.  Count VIII

Plaintiff incorporates into count VIII paragraphs 87-93 and 107 of the complaint, which appears as the "third issue" in the "nature of the case" portion of the complaint.  (Compl., at pp. 18-

19).  Plaintiff alleges that he was "denied and deprived of his right to file prison grievances under the First Amendment . . . by defendants Romero and Woodbury, when they ransacked plaintiff's cell and issued plaintiff a false NOC [notice of charges] for theft in retaliation for plaintiff's constitutionally protected grievance writing activity, thereby chilling plaintiff's First Amendment rights."  (Compl., at p. 35).

Plaintiff alleges that on January 24, 2012, defendants Romero and Woodbury "ransacked" his cell and submitted a NOC against plaintiff for theft of various items found in plaintiff's cell. Plaintiff alleges that defendants Romero and Woodbury took these actions in retaliation against plaintiff because plaintiff "wrote too many" grievances.  Plaintiff alleges that following this incident, he discontinued filing grievances to avoid further acts of retaliation.  (Compl., at ¶¶ 87-93; pp.18-19).  Plaintiff has alleged sufficient facts to state a colorable claim against defendants Romero and Woodbury for retaliation in violation of the First Amendment. "  *Brodheim v. Cry*, 584 F.3d 1262, 1269.  Count VIII shall proceed against defendants Romero and Woodbury.

**K.  Count IX**

Plaintiff incorporates into count IX paragraphs 94-99 and 107 of the complaint, which appears as the "fourth issue" in the "nature of the case" portion of the complaint.  (Compl., at pp. 20-21).  Plaintiff alleges that he was "denied and deprived of his right to a constitutionally adequate law library by defendants Burson, Williams, Howell, Cox, Skolnik, Dreesen, Connett, Foster, and Smith, when they revised and maintained SDCC law library operations and procedure in a manner designed to expressly hinder and frustrate plaintiff and other SDCC prisoners in their legal pursuits.  (Compl., at p. 36).

Plaintiff alleges that in the late part of 2010, defendants Williams, Howell, Burson, Cox, and Skolnik revised SDCC's law library operations policy in an unconstitutional manner to delay, hinder, and discourage plaintiff and other prisoners from their legal pursuits.  Plaintiff alleges that defendants Dreesen, Connett, Foster, and Smith maintained the revised law library operations policy. Plaintiff alleges that the revised SDCC law library operations policy includes: (1) reduction of law

library access from five days per week and five hours per day to two days per week and two and one half hours per day; (2) the installation of a complex computer research system which cannot be fully operated by the majority of SDCC prisoners; (3) only five legal research computers, one or more of which is inoperable at times; (4) the removal of nearly all legal research books; (5) only twenty prisoners are permitted in the library in a single two and one half hour time block; (6) prisoners are limited to 30 minutes of computer legal research, unless no other prisoners are awaiting computer research; (7) prisoners are only permitted access to the law library with those in their respective units and are precluded from gaining legal assistance from prisoners in other units; (8) SDCC prisoners, particularly those housed in segregated housing units are routinely deprived of sufficient legal material and legal assistance.  Plaintiff further complains that there is no training course to ensure that SDCC legal assistants have sufficient legal training to effectively assist other prisoners in submitting meaningful pleadings to the courts.  (Compl., at ¶¶ 94-99; pp. 20-21).

Prisoners have a constitutional right of access to the courts that arises under the Due Process Clause of the Fourteenth Amendment.  *Lewis v. Casey*, 518 U.S. 343, 346 (1996).  A prisoner alleging a violation of his right of access to the courts must have suffered "actual injury."  *Id.* at 349-50.  The right to access the courts is limited to direct criminal appeals, habeas corpus proceedings, and civil rights actions challenging conditions of confinement.  *Id.* at 354-55.  "An inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is sub-par in some theoretical sense."  *Id.* at 351.  Rather, the inmate "must go one step further and demonstrate that the library or legal assistance program hindered his efforts to pursue a legal claim."  *Id.*  The actual-injury requirement mandates that an inmate "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded."  *Id.* at 353.  In *Lewis v. Casey*, the Supreme Court defined prisoners' right of access to the courts as simply the "right to bring to court a grievance."  *Id.* at 354.

In the instant case, plaintiff has merely alleged that the law library at SDCC is substandard and that the new regulations are not to his liking.  This does not state a cognizable claim for denial of

access to the courts.  Plaintiff has not alleged that defendants have hindered his efforts to pursue a nonfrivolous legal claim regarding a direct criminal appeal, habeas corpus proceedings, or civil rights actions challenging conditions of confinement.  As such, plaintiff has failed to allege actual injury.  Plaintiff fails to state a claim for denial of access to the courts.  Because this deficiency cannot be cured through further amendment, count IX is dismissed with prejudice.

**L.  Count X**

Plaintiff incorporates into count X paragraphs 100-104 and 107 of the complaint, which appears as the "fifth issue" in the "nature of the case" portion of the complaint.  (Compl., at p. 22). Plaintiff alleges that he was "denied and deprived of his right to file and seek redress of his grievance under the First Amendment of the United States Constitution . . . by defendant Burson when she continuously impeded and halted plaintiff's attempts to appeal a number of grievance rejection decisions to higher levels of review through established NDOC grievance procedure . . . ." (Compl., at p. 37).  Plaintiff alleges that defendant Burson, as the SDCC grievance coordinator, has developed a policy, practice, or custom of rejecting prisoners' attempts to appeal Burson's initial rejection of grievances.  (Compl., at  ¶¶ 100-104; p. 22).  Plaintiff's allegations are sufficient to state a colorable claim against defendant Burson for violation of plaintiff's First Amendment rights.  *See Brodheim v. Cry*, 584 F.3d at 1269.  Count X shall proceed against defendant Burson.

**M.  Count XI**

Plaintiff incorporates into count XI paragraphs 105-106 and 107 of the complaint, which appears as the "sixth issue" in the "nature of the case" portion of the complaint.  (Compl., at p. 23). Plaintiff alleges that he was "denied and deprived of his right to assist other needy prisoners in their legal pursuits, his right to file and seek redress of his grievances, and his right to adequate law library operations under the First Amendment.  (Compl., at p. 38).  Plaintiff further alleges that defendants Sandoval, Miller, and Cortez-Masto, as members of the Nevada Board of Prison Commissioners, and defendants Skolnik and Cox, deliberately failed to ensure the proper training of defendants Graves, Griggs, Williams, Wilson, Burson, Howell, Dreesen, Connett, Smith, Foster, Romero, and

Woodbury as to: (1) the proper use of the NDOC disciplinary and grievance procedures and purposes; (2) the effective operation of the SDCC law library; and (3) the constitutional rights of plaintiff and NDOC prisoners in general with respect to prison conditions." (*Id.*).

Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), *cert. denied*, 442 U.S. 941 (1979). A plaintiff can establish the necessary causal connection for supervisory liability by alleging that the defendant "set[] in motion a series of acts by others" or "knowingly refus[ed] to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir. 2011) (internal quotations, original alterations, and citations omitted). Thus, "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1208  (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)); *see also Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991).

Although the United States Supreme Court has rejected the idea that "knowledge and acquiescence" of subordinates' conduct is enough to hold supervisory officials liable under section 1983 where the a claim is one of purposeful and unlawful discrimination, *Ashcroft v. Iqbal*, 556 U.S. 662, 677-684 (2009), the Ninth Circuit Court of Appeals has held that where the applicable constitutional standard is deliberate indifference, "a plaintiff may state a claim against a supervisory for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." *Starr*, 652 F.3d at 1205. "Even under a deliberate indifference theory of individual liability, the [p]laintiffs must still allege sufficient facts

1    to plausibly establish the defendant's 'knowledge of' and 'acquiescence in' the unconstitutional

2    conduct of his subordinates." *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012) (citing *Star v.*

3    *Baca*, 652 F.3d at 1206-07).

4           In the instant case, plaintiff has alleged sufficient facts to plausibly establish that defendants

5    Skolnik and Cox had knowledge of the improper use of the NDOC disciplinary and grievance

6    procedures and purposes, and failed to train defendants Graves, Griggs, Williams, Wilson, Burson,

7    Howell, Dreesen, Connett, Smith, Foster, Romero, and Woodbury.  However, plaintiff has failed to

8    allege facts to state a colorable claim against defendants Skolnik and Cox for failure to train their

9    subordinates in "the effective operation of the SDCC law library" and "the constitutional rights of

10   plaintiff and NDOC prisoners in general with respect to prison conditions."  The claim against

11   defendants Skolnik and Cox for failure to train their subordinates in the use of the NDOC

12   disciplinary and grievance procedures may proceed.

13          However, there is no indication from the facts alleged that defendants Sandoval, Miller, and

14   Cortez-Masto, as members of the Nevada Board of Prison Commissioners, had the requisite level of

15   knowledge, participation, or acquiescence in the alleged failure to train correctional staff.  Plaintiff

16   fails to state a claim against defendants Sandoval, Miller, and Cortez-Masto, and further amendment

17   would be futile.  As such, defendants Sandoval, Miller, and Cortez-Masto are dismissed from this

18   action with prejudice.

19          **N.  Claims in Supplement (ECF No. 6, at pp. 4-8)**

20          As discussed earlier in this order, attached to plaintiff's motion to supplement is plaintiff's

21   affidavit (ECF No. 6, at pp. 4-8), containing plaintiff's allegations against two new defendants,

22   correctional officers J. Meranza and R. Hill.  The court construes plaintiff's affidavit as a supplement

23   to the complaint and reviews the claims within it under the same screening standard as the

24   complaint.

25          Plaintiff alleges that on December 4, 1012, defendants Meranza and Hill searched his cell and

26   took items of property, including one pillow, magazines, and a bottle of antacid medication.  Plaintiff

1   alleges that defendants Meranza and Hill conducted the cell search and took his property in

2   retaliation for plaintiff having assisted another inmate prepare a grievance against correctional staff

3   the day prior to the cell search.  (ECF No. 6, at pp. 4-6).

4         "A prisoner suing prison officials under [§] 1983 for retaliation must allege that he was

5   retaliated against for exercising his constitutional rights and that the retaliatory action does not

6   advance legitimate penological goals, such as preserving institutional order and discipline." *Barnett*

7   *v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curium); *see also Rizzo v. Dawson*, 778 F.2d

8   527, 532 (9th Cir. 1985).  "[P]risoners have a First Amendment right to file prison grievances."

9   *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).  Retaliating against prisoners for exercising

10  the right to file prison grievances is itself a constitutional violation.  *Id.* at 1269.  The prisoner must

11  allege that his First Amendment rights were chilled or infringed by the alleged retaliatory action.  *See*

12  *Resnick v. Hayes*, 213 F.3d 443, 449

13        Plaintiff has alleged that defendants Meranza and Hill were aware of plaintiff's

14  constitutionally-protected activity of assisting another inmate with filing a grievance.  Plaintiff has

15  alleged that in retaliation for plaintiff engaging in constitutionally protected activity, defendants

16  conducted a needless search of his cell and wrongly confiscated items of his property.  Plaintiff has

17  further alleged that his First Amendment rights were chilled, insofar as plaintiff was apprehensive

18  about continuing to assist other inmates with grievances.  Plaintiff states a colorable First

19  Amendment retaliation claim against defendants J. Meranza and R. Hill.

20  **V.  Conclusion**

21        **IT IS THEREFORE ORDERED** that plaintiff's applications to proceed *in forma pauperis*

22  (ECF Nos. 1, 2, 4, 5) without having to prepay the full filing fee are **GRANTED**.  Plaintiff shall **not**

23  be required to pay an initial installment fee.  Nevertheless, the full filing fee shall still be due,

24  pursuant to 28 U.S.C. § 1915, as amended by the Prisoner Litigation Reform Act of 1996.  The

25  movant herein is permitted to maintain this action to conclusion without the necessity of prepayment

26  of fees or costs or the giving of security therefor.  This order granting *in forma pauperis* status shall

1   not extend to the issuance of subpoenas at government expense.

2       **IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 1915, as amended by the

3   Prisoner Litigation Reform Act of 1996, the Nevada Department of Corrections shall pay to the clerk

4   of the United States District Court, District of Nevada, 20% of the preceding month's deposits to the

5   account of Curtis L. Downing, inmate number 18675, (in months that the account exceeds $10.00)

6   until the full $350 filing fee has been paid for this action.  The clerk shall send a copy of this order to

7   the attention of **Albert G. Peralta, Chief of Inmate Services for the Nevada Department of**

8   **Prisons,** P.O. Box 7011, Carson City, NV 89702.

9       **IT IS FURTHER ORDERED** that, even if this action is dismissed, or is otherwise

10  unsuccessful, the full filing fee shall still be due, pursuant to 28 U.S.C. §1915, as amended by the

11  Prisoner Litigation Reform Act of 1996.

12      **IT IS FURTHER ORDERED** that plaintiff's motion for a status check (ECF No. 3) is

13  **DENIED** as moot.

14      **IT IS FURTHER ORDERED** that plaintiff's motion to supplement his civil rights

15  complaint (ECF No. 6) is **GRANTED**, to the extent that the court **CONSTRUES** plaintiff's sworn

16  affidavit (ECF No. 6, at pp. 4-8) containing allegations against defendants J. Meranza and R. Hill, as

17  the supplement to the complaint.  The clerk of court **SHALL DETATCH AND FILE** plaintiff's

18  affidavit (ECF No. 6, at pp. 4-8), docketing the same as the supplement to the complaint.

19      **IT IS FURTHER ORDERED** that plaintiff's claims for damages against all defendants in

20  their **official capacity** are **DISMISSED WITH PREJUDICE** from this action.

21      **IT IS FURTHER ORDERED** that plaintiff's First Amendment retaliation claim in count I

22  against defendant Graves states a colorable claim and **SHALL PROCEED.**

23      **IT IS FURTHER ORDERED** that plaintiff's due process claim in count II against

24  defendant Griggs states a colorable claim and **SHALL PROCEED.**

25      **IT IS FURTHER ORDERED** that plaintiff claim of violation of his First Amendment

26  rights in count III states a colorable claim and **SHALL PROCEED** against defendants Graves,

24

Griggs, Williams, and Cox.

**IT IS FURTHER ORDERED** that plaintiff's First Amendment retaliation claim in count IV against defendant Wilson states a colorable claim and **SHALL PROCEED.**

**IT IS FURTHER ORDERED** that plaintiff's First Amendment retaliation claim in count V against defendant Burson states a colorable claim and **SHALL PROCEED.**

**IT IS FURTHER ORDERED** that plaintiff's First Amendment retaliation claim in count VI states a colorable claim and **SHALL PROCEED** against defendants Burson, Howell, Williams, and Cox.

**IT IS FURTHER ORDERED** that plaintiff's First Amendment retaliation claim in count VII states a colorable claim and **SHALL PROCEED** against defendants Burson, Williams, and Foster.

**IT IS FURTHER ORDERED** that plaintiff's First Amendment retaliation claim in count VIII states a colorable claim and **SHALL PROCEED** against defendants Romero and Woodbury.

**IT IS FURTHER ORDERED** that count IX, plaintiff's access to the courts claim, is **DISMISSED WITH PREJUDICE**, as amendment would be futile.

**IT IS FURTHER ORDERED** that plaintiff's First Amendment claim in count X against defendant Burson states a colorable claim and **SHALL PROCEED.**

**IT IS FURTHER ORDERED** that plaintiff's claim in count XI against defendants Skolnik and Cox for failure to train their subordinates in the use of the NDOC disciplinary and grievance procedures **SHALL PROCEED**.

**IT IS FURTHER ORDERED** that plaintiff's claim in count XI against defendants Skolnik and Cox for failure to train their subordinates in "the effective operation of the SDCC law library" and "the constitutional rights of plaintiff and NDOC prisoners in general with respect to prison conditions" is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that plaintiff's claim in count XI against defendants Sandoval, Miller, and Cortez-Masto for failure to train their subordinates is **DISMISSED WITH**

1    **PREJUDICE**.  Defendants Sandoval, Miller, and Cortez-Masto are **DISMISSED** from this action

2    **WITH PREJUDICE.**

3          **IT IS FURTHER ORDERED** that plaintiff's First Amendment retaliation claim against

4    defendants J. Meranza and R. Hill, in the supplement (ECF No. 6, at pp. 4-8), states a colorable

5    claim and **SHALL PROCEED.**

6          Dated this _____31st_____ day of January, 2013.

7

8                                              _____

9                                              UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26